IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 27, 2001 Session

## CARRIE JUNE MARSH v. CHRISTOPHER SENSABAUGH

**Direct Appeal from the Juvenile Court for Haywood County**
**No. 5587     J. Roland Reid, Judge**

---

**No. W2001-00016-COA-R3-JV - October 1, 2001**

---

This is a child custody case involving the child's natural father and a third-party, the maternal aunt. The trial court held in favor of the maternal aunt, upon a determination the father was an unfit parent. The court based its decision on the father's previous charge of contempt for failure to pay child support, previous visitation practices, and lack of knowledge regarding the child's educational status, such as her teachers, grades and attendance at parent-teacher conferences. Father appeals the trial court's decision. For the reasons below, we affirm the ruling of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS and HOLLY K. LILLARD, J.J., joined.

Didi Christi, Brownsville, Tennessee, for the appellant, Christopher Sensabaugh.

D. Nathaniel Spencer, Brownsville, Tennessee, for the appellee, Carrie June Marsh.

### OPINION

On August 31, 1993, Christy Lewis (Ms. Lewis) gave birth to a child, Cassie Lynn Sensabaugh (Cassie). The appellant, Christopher Sensabaugh (Mr. Sensabaugh), is the father of the child.[1] Mr. Sensabaugh and Ms. Lewis were minors at the time of Cassie's birth. Neither parent was in the position to raise the child, and on February 11, 1998, Mr. Sensabaugh and Ms. Lewis entered

---

[1]An Order of Paternity declared Mr. Sensabaugh to be the legal father of Cassie on July 6, 1994.

a Consent Order whereby they agreed to vest temporary custody of Cassie in Tracy Marsh and Carrie June Marsh (Ms. Marsh). Ms. Marsh is Cassie's maternal aunt and the appellee in this action.[2]

On July 27, 2000, Mr. Sensabaugh petitioned the Haywood County Juvenile Court for custody of Cassie. Prior to the hearing, Mr. Sensabaugh and Ms. Marsh entered a consent order permitting the Tennessee Department of Children's Services (TDCS) to conduct home studies of the parties to assist the court in its custody determination.[3]

The trial court conducted the child custody hearing on October 26, 2000.[4] At the hearing, Mr. Sensabaugh testified that he is 23 years old and married to Tracy Sensabaugh. Mr. Sensabaugh insisted that he loves Cassie and is now prepared to be her father. He stated that he has stable employment, having worked for the same construction company for three years. Mr. Sensabaugh also indicated that he was purchasing a mobile home and stated it was a safe residence with adequate space for Cassie.

Mr. Sensabaugh admitted that he was regularly behind in child support payments through much of Cassie's life. He testified that he spent time in jail for non-payment of child support when a court held him in contempt in March 2000. Mr. Sensabaugh did state, however, that he has paid his court ordered child support obligation since his incarceration while voluntarily paying more to catch up on the amount in arrears. Mr. Sensabaugh also admitted to having a criminal record for the illegal possession of a controlled substance.

Mr. Sensabaugh testified that he did not regularly exercise his visitation privileges when Cassie was younger. However, he stated that he visited the child on a regular basis over the past year, especially in the months preceding trial. He also testified that he did not know any of Cassie's teachers or grades, and he admitted that he has never attended a parent-teacher conference.

Mr. Sensabaugh also testified that during his visitation periods he often leaves Cassie with his wife at her place of employment. He stated that his wife works in a grocery store that is adjacent to a tavern. After admitting that the authorities arrested the tavern keeper for having Cassie in the tavern during business hours, Mr. Sensabaugh stated that he continued to believe the store was an adequate place for Cassie.

---

[2]Christy Lewis, the child's mother, chose not to participate in this action. Additionally, Ms. Marsh and Tracy Marsh separated prior to trial, and he chose not to be a party to this action.

[3]The TDCS home studies were filed with the trial court clerk, but there is no indication the studies were entered into evidence. Thus, we will not consider them on this appeal.

[4]Pursuant to Rule 24 of the Tennessee Rules of Appellate Procedure, the appellant, Mr. Sensabaugh, submitted a statement of the evidence without objection from the appellee, Ms. Marsh. Ms. Marsh, in turn, offered her own evidentiary statement which stipulated to much of Mr. Sensabaugh's statement. However, Ms. Marsh added to Mr. Sensabaugh's evidentiary statement and noted areas in dispute. Mr. Sensabaugh did not object to Ms. Marsh's statement of the evidence. We will consider both parties evidentiary statements and note the testimony in dispute. However, we do not consider the disputed testimony pertinent to our decision.

Tracy Sensabaugh, Mr. Sensabaugh's wife, testified that she has a good relationship with Cassie. She admitted that the child regularly stays at her place of employment for up to eight hours during Mr. Sensabaugh's visitation period. Ms. Sensabaugh stated that she does not allow Cassie to enter the portion of the store that sells beer, but she does permit Cassie to play behind the cash register near the door which connects the store to the tavern.

Ms. Marsh stated that she has a loving, caring relationship with Cassie. She testified that Cassie is well-adjusted and has a good home life. Ms. Marsh claimed that she is primarily responsible for the child's medical and dental care, as well as Cassie's education.

Ms. Marsh stated that she often encouraged Mr. Sensabaugh to visit the child. She testified that he rarely visited in the past, but when he did exercise his visitation rights, he would often leave Cassie with another party. She further stated that Mr. Sensabaugh is irresponsible and has exhibited only slight interest in the child. Finally, Ms. Marsh stated that she feels Mr. Marsh is only seeking custody as retaliation for the child support contempt petition. The record is disputed as to whether Ms. Marsh thinks Mr. Sensabaugh is an unfit parent or a danger to the child.

After hearing the above evidence, the trial court postponed ruling on the case until each party submitted briefs detailing their legal positions. On November 27, 2000, the court entered an order denying Mr. Sensabaugh's custody petition. The trial court's order states as follows:

> This cause came on to be heard the 26th day of October, 2000, upon petition of Christopher Sensabaugh, natural father, of Cassie Sensabaugh, for change of custody, upon answer of Cassie June March [sic], maternal aunt and current legal custodian, the record and exhibits admitted, testimony of witnesses from which the court finds:
>
> In custody disputes the proper standard of review is clear and convincing evidence of parental unfitness or substantial risk of harm to the child where the dispute involves a contest between parent and non-parent. (Citations omitted).
>
> The proof in the record shows the petitioner is presently unfit to care for the child. The court bases it's [sic] decision upon his previous contempt for failure to pay child support, only taken [sic] visitation, lack of knowledge of the child's educational status, i.e. teachers, grades, attendance at parent-teacher conferences, etc.
>
> **IT IS THEREFORE ORDERED** that the petition for custody be and hereby is denied.

From this order, Mr. Sensabaugh now appeals. The issue, as we perceive it, is whether the trial court erred in its determination that custody of Cassie should remain in Ms. Marsh because Mr. Sensabaugh is an unfit parent.

To the extent these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d). We may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* With respect to the trial court's legal conclusions, our review is *de novo* with no presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

Under the United States and Tennessee Constitutions, parents have a fundamental liberty interest regarding the custody of their children. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *In re Askew*, 993 S.W.2d 1, 3 (Tenn. 1999); *Bond v. McKenzie*, 896 S.W.2d 546, 547 (Tenn. 1995). A court may not deprive a natural parent of custody of their child in favor of a third party unless the court determines the parent is unfit or there is a danger of substantial harm to the child. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re Askew,* 993 S.W.2d at 4; *Stephenson v. West*, No. W1998-00668-COA-R3-CV, 2000 WL 52899, at *3 (Tenn. Ct. App. Jan. 13, 2000) (*no perm. app. filed*). As the natural parent has superior rights against third parties, a third party seeking custody carries the burden of proof. *In re Askew,* 993 S.W.2d at 4-5. The third party must show the danger of substantial harm or the unfitness of a parent by a "clear preponderance of convincing proof." *Stubblefield v. State ex rel. Fjelstad*, 106 S.W.2d 558, 560 (Tenn. 1937); *Henderson v. Mabry*, 838 S.W.2d 537, 540 (Tenn. Ct. App. 1992). Accordingly, in order to prevail in a child custody action in Tennessee, third parties must overcome a strong presumption in favor of the child's natural parents.

In the present case, the trial court used the correct legal standard stating that "[i]n custody disputes the proper standard of review is clear and convincing evidence of parental unfitness or substantial risk of harm to the child where the dispute involves a contest between parent and non-parent." Therefore, we must determine if the record supports a finding that Mr. Sensabaugh is an unfit parent. Ms. Marsh had the burden to demonstrate Mr. Sensabaugh is an unfit parent by clear and convincing evidence. This Court addressed this evidentiary standard in *O'Daniel v. Messier*, 905 S.W.2d 182, 187-88 (Tenn. Ct. App. 1995). In *O'Daniel* we stated:

> The "clear and convincing evidence" standard defies precise definition. While it is more exacting than the preponderance of the evidence standard, it does not require such certainty as the beyond a reasonable doubt standard.
>
> Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. It should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established.

*Id.* at 188 (citations omitted).

The trial court decided there was clear and convincing evidence demonstrating Mr. Sensabaugh is "presently unfit" to care for Cassie. The court based its decision on Mr. Sensabaugh's

"previous contempts for failure to pay child support, only taken [sic] visitation, lack of knowledge of the child's educational status, i.e. teachers, grades, attendance at parent-teacher conferences, etc."

This Court addressed the issue of parental unfitness in previous cases. In *In re Crawford*, No. 02A01-9405-CH-00124, 1995 WL 72615, at *6 (Tenn. Ct. App. Feb. 22, 1995) (*no perm. app. filed*), we reversed the trial court, concluding the record failed to demonstrate parental unfitness. The trial court based much of its ruling on the natural parent's alcohol troubles in the past and the parent's past inability to properly care for the child. *Id*. This Court stated the parent was previously unfit, but determined the proof in the record related to the six months preceding trial indicated the parent had a stable home life and was presently in position to care for his daughter. *Id*.

In *Wood v. Wood*, No. M1999-00341-COA-R3-CV, 2000 W.L. 1156619, at *6 (Tenn. Ct. App. Aug. 16, 2000) (*no perm. app. filed*), we ruled the trial court failed to use the correct legal standard and remanded the case for a determination of whether the parent is unfit or whether substantial harm would result if the parent won custody of his daughter. *Id*. We stated the record did not indicate the parent was unfit when there was undisputed testimony that the parent "no longer consumes alcohol, does not smoke cigarettes in his home, and that he now has a stable home environment." *Id*.

Mr. Sensabaugh asserts that much of the proof served only to illustrate that he was previously an unfit parent. He maintains he is currently able to raise Cassie and argues the evidence at trial failed to establish he is presently unfit as a parent. We cannot agree. It is our determination that the proof at trial was sufficient to warrant the trial court's ruling in the case at bar.

At trial, Mr. Sensabaugh admitted that his failure to pay child support led to his incarceration in March 2000. He petitioned the court for custody of Cassie four months later, and the court heard the case in October 2000. The trial court listed the contempt charge as one of its reasons in denying Mr. Sensabaugh custody of Cassie. We conclude the trial court permissibly relied on the evidence in making its determination. The contempt charge was sufficiently close in time to indicate Mr. Sensabaugh's parental fitness. Not only is it troubling that it took incarceration to compel Mr. Sensabaugh to care for Cassie, it is difficult to imagine Mr. Sensabaugh transformed from a parent who often neglected to provide for his child to one who is prepared to constantly care for Cassie in seven months. Moreover, it is apparent that Mr. Sensabaugh had the resources to support Cassie when the court held him in contempt. Proof at trial indicated Mr. Sensabaugh worked for the same company for three years preceding the contempt charge. Financial resources, or lack thereof, are not indicative of parental fitness, but a clear disregard of parental responsibilities when one is capable of performance indicates one may not be ready for the duties of a custodial parent.

The trial court also relied on Mr. Sensabaugh's past visitation habits in reaching its conclusion. Evidence at trial established that Mr. Sensabaugh rarely visited Cassie for much of her life. We acknowledge that Mr. Sensabaugh fathered Cassie at a young age and his immaturity played a role in his lack of visitation. We are also aware that he now visits Cassie on a regular basis and had done so for many of the months preceding trial. We are of the opinion, however, that Mr.

Sensabaugh's visitation practices indicate he is unfit as a parent. Though Mr. Sensabaugh currently exercises his visitation privileges, he admits to leaving Cassie with his wife at her place of employment, a convenience store adjacent to a tavern. When Mr. Sensabaugh has weekend visitation, Cassie stays at the store almost every Saturday for up to eight hours. Mr. Sensabaugh is aware that the environment is not suitable for a child, as the authorities arrested Mr. Sensabaugh's mother and the tavern keeper for allowing Cassie in the tavern during business hours. Even after this incident, Mr. Sensabaugh stated he continues to believe this is an appropriate environment for Cassie. We are of the opinion the circumstances and facts associated with Mr. Sensabaugh's visitation support the trial court's decision.

The trial court also listed Mr. Sensabaugh's lack of knowledge regarding Cassie's education as a factor in denying Mr. Sensabaugh custody of the child. While this alone is not enough to establish parental unfitness, the court permissibly relied on it as a contributing element in reaching its ultimate conclusion. Additionally, the court heard evidence that Mr. Sensabaugh was arrested for the illegal possession of a controlled substance. It was also proper for the trial court to consider this arrest in reaching its decision.

Mr. Sensabaugh's situation is in contrast to our decisions in *Crawford* and *Wood*. While a parent who has a present drug or alcohol abuse problem may be unfit to care for a child, past substance abuse problems do not directly reflect the parent's attitudes, sense of responsibility and dedication toward raising a child. The facts and circumstances in this case directly bear on Mr. Sensabaugh's parental fitness. Mr. Sensabaugh's recent failures to pay child support, when he clearly had the means to do so, tend to indicate he is presently unable to responsibly care for Cassie. Further, his visitation practices point negatively toward his present attitudes and dedication in raising Cassie. We conclude the combination of Mr. Sensabaugh's failures to pay child support, his visitation practices, his lack of knowledge regarding Cassie's education, and his arrest for possession of a controlled substance clearly show he is an unfit parent. Thus, the trial court correctly decided this child custody case in favor of the appellee, Ms. Marsh.

### *Conclusion*

For the foregoing reasons, we affirm the decision of the trial court. The costs of this appeal are taxed to the appellant, Christopher Sensabaugh, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-6-